UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FRANK BRAIN AMBROSE,  CIVIL NO. 13-2343 (PJS/JSM)

    Petitioner,

v.  REPORT AND RECOMMENDATION

B.R. JETT, Warden

    Respondent.

JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Frank Brain Ambrose's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondent filed a response contending that the Petition should be denied. [Docket No. 4]. Petitioner has filed a reply. [Docket No. 7].

The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I. BACKGROUND

Petitioner Frank Brain Ambrose ("Ambrose") is serving a 70-month sentence, followed by five years of supervised release for life, following his conviction for Conspiracy to Commit Arson in violation of 18 U.S.C. § 844(f)(1). See Declaration of Angela Buege [Docket No. 5] ("Buege Decl."), ¶ 3, Attach. A. Ambrose is presently incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). Id. Ambrose's projected release date is December 23, 2013, via Good Conduct Time release. Id.

1

Ambrose was reviewed by FMC-Rochester staff for Residential Reentry Center ("RRC") placement on April 25, 2012, pursuant to the Second Chance Act ("SCA") of 2007 (18 U.S.C. § 3621(b)). See Buege Decl., ¶ 4. Staff recommended to the Community Corrections Manager's Office that Ambrose be given 151-180 days of home detention or RRC placement. Id., ¶ 5; Attach. B. The staff's recommendation for home detention or RRC placement was based on the following factors set forth in 18 U.S.C. § 3621(b): (1) the resources of the facility contemplated; (2) the nature and circumstances of Ambrose's offense, which was Conspiracy to Commit Arson; (3) the fact that Ambrose was sentenced within the Sentencing Commission's guideline term for the offense, 60-240 months; and (5) Ambrose's history and characteristics, including his educational and vocational participation, work performance, involvement in counseling and in release preparation programs, discipline history, prior convictions (disorderly conduct in 2000), history of violence and escape, general job and life skills, and community resources in Virginia (including a residence with his parents). Id., ¶¶ 4, 5, Attach. B. It was noted that relocation of Ambrose's supervision was required from the Western District of Michigan (where he was sentenced), to the Eastern District of Virginia (where his parents reside). Id., ¶ 5, Attach. B. Respondent Warden B.R. Jett approved the determination. Id.

On July 18, 2012, Ambrose's RRC placement was re-reviewed pursuant to his request. See Buege Decl., ¶ 6. After reviewing the resources of the facility contemplated, the nature and circumstances of the offense, Ambrose's history and characteristics, sentencing information and his available resources, FMC-Rochester staff recommended 210-240 days of RRC placement or home confinement. Id., ¶¶ 6, 7,

Attach. C.  The relocation of his supervision was also approved.  Id.  Warden Jett approved this determination.  Id.

On October 31, 2012, Warden Jett completed an Institutional Referral for RRC Placement form, recommending that Ambrose receive 181-270 days of RRC placement. Id., ¶ 8, Attach. D.  The referral was addressed to Erlinda Hernandez, Residential Reentry Manager ("RRM") at the Federal Correctional Complex in Butner, North Carolina.  Id.  But because there were no RRCs close to Ambrose's release residence of Manassas, Virginia, on December 3, 2012, his referral packet was forwarded to the RRM located in Baltimore for processing.  Id., ¶ 8. The Baltimore RRM referred Ambrose for the 181-270 days of RRC placement that Warden Jett had approved.  Id.

On December 11, 2012, the RRC to which Ambrose had been referred, denied his placement based on his conviction for arson.  Id., ¶ 9.  In its response to the Petition, the Bureau of Prisons ("BOP") indicated that this conviction was based on (1) setting fire to the Agricultural Hall at the Michigan State University; and (2) setting fire to commercial lumbering equipment.  Id.  Ambrose had personally poured gasoline throughout the Agricultural Hall, fashioned a crude fuse and lit the fuse, resulting in $1.1 million in property damage and requiring numerous firefighters to put their lives at risk in their attempt to control the fire.  Id.  Ambrose was also involved in setting fire to a John Deere Hydro-Ax Shear and a commercial flatbed trailer.  Id.  The BOP referenced Statement 7310.04, "Community Corrections Center (CCC) Utilization and Transfer Procedure", that provides that inmates who ordinarily pose a significant threat to the community shall not ordinarily participate in RRC programs, including inmates with a history of repetitive violence. Id., Attach. E, p. 11.

3

Because RRC placement was denied by the RRC, Ambrose was not allowed to participate in home confinement, as such placement would require him to return to the RRC at least twice a week for routine progress review, counseling, urine tests and other program participation pursuant to Program Statement 7320.01. Id., ¶ 10, Attach. F, attachment B, p. 2. In addition, Ambrose was not placed in home confinement because it was the RRM's practice to observe how an inmate adjusted to an RRC and its programs before he is reviewed for home confinement. Id., ¶ 10.

Following the denial of RRC placement, Ambrose pursued the required administrative remedies. Id., ¶ 11; United States' Reponses to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Govt's Resp.") [Docket No. 4], p. 12. In response to the institutional administrative remedy, Ambrose was informed that he was denied home confinement or RRC placement based on his past or present affiliation with Earth Liberation Front ("ELF"). Buege Decl., n. 5 (citing Exhibits 1 and 2 of Ambrose's Memorandum). In response to his appeal of this decision, Ambrose was informed that he was denied home confinement or RRC placement based on his history of violence. Id.

Ambrose commenced the present writ of habeas corpus action pursuant to 28 U.S.C. § 2241, alleging four grounds: (1) BOP violated 18 U.S.C. § 3621(b) by not relying on a complete RRC evaluation and by relying on his current offense, as opposed to the statements of character provided by the Government and the sentencing judge reflecting that he was no longer a threat; (2) the BOP violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(a), by giving RRC placement to similarly convicted inmates who had been involved with arson and were affiliated with ELF, while

denying him such placement based on his affiliation with ELF; (3) the BOP violated 18 U.S.C. § 3624(c)(1) by denying him the ability to re-establish himself during the last months of his imprisonment; and (4) the BOP improperly determined that he had a "history of violence" based solely on his present conviction, making its finding invalid and arbitrary. See Petition for Writ of Habeas Corpus Under 28 U.S.C. §2241 [Docket No. 1], pp. 6-8.

For relief, Ambrose seeks to be released to home confinement for the final months of his sentence. Id., p. 8.

In his supporting memorandum, Ambrose argued that under Program Statement 7310.04, which addresses RRC placement of an inmate that may pose a threat to the community, the BOP failed to properly evaluate his characteristics in determining the chance that he will recommit or otherwise harm the public. See Memorandum in Support of 28 U.S.C. § 2241 ("Pl.'s Mem.") [Docket No. 2], p. 6. According to Ambrose, the evidence[1] supported a finding that he is no longer a threat to the community. Id., pp. 6-8. First, Ambrose pointed to the sentencing judge's statement during sentencing:

> Deterrence is also important, and there are two levels of deterrence, one is specific, the other general. Only one is operative here, in the Court's judgment, and that is general deterrence of others. I'm satisfied that Mr. Ambrose has self-corrected, that he does not pose a risk of further criminal wrongdoing once he is released from his term of imprisonment. But the Court also has to be mindful of general deterrence in fashioning a sentence here that is deterring others who may contemplate similar activities in the future.

Id., pp. 6-7, Ex. 5.

---

[1] Ambrose attached eight exhibits to his memorandum.

Second, Ambrose relied on the Government's sentencing memorandum, stating that he had "voluntarily abandoned his violent extremism in about 2004, years before this prosecution commenced, he became a productive member of society, and he has done everything he could to make amends for his past misconduct during the course of his prosecution." Id., p. 7, Ex. 6.

Third, Ambrose offered a letter that was sent to the BOP's Office of General Counsel from the Assistant United States Attorney ("AUSA") who had prosecuted Ambrose, Hagen Frank, in support of Ambrose's appeal of the denial of his request to be placed in an RRC. Id., p. 7, Ex. 7. In this letter, AUSA Frank disagreed with the assessment that Ambrose posed a danger to the public and stated that he could not "think of any defendant I have ever prosecuted who has so thoroughly rehabilitated himself." Id.. AUSA Frank also noted that Ambrose cooperated extensively with law enforcement in the investigations of arson by members of the ELF. Id.

Ambrose also took issue with the BOP's assertion that his history of violence and his past affiliation with ELF were the reasons for denying him placement in a RRC, when other members of ELF were granted RRC time and even one member continued to advocate violence while housed in a communications management facility. Id., p. 8. According to Ambrose, these contradictory and arbitrary decisions amounted to a violation of the APA. Id., pp. 8-9. Further, as to the assertion the BOP's reliance on his "history of violence," Ambrose claimed that under Program Statement 5100.08, a history of violence designation requires examination of an individual's entire background of criminal violence and excludes the current term of confinement. Id., p. 9. Here, Ambrose has been convicted for only one violent offense – the arson conviction at issue

6

in this case – making the BOP's reliance on this conviction arbitrary and invalid. Id., p. 9.

Lastly, Ambrose asserted that to properly afford him a reasonable opportunity to adjust to and prepare for his reentry into the community, he should be placed in home confinement in order to find work as a wood flooring installer and refinisher, which would be harder to do if he is released during the winter. Id., pp. 10-11.

In response, after acknowledging that Ambrose had exhausted the administrative remedies, the BOP argued that this Court lacked the requisite subject matter jurisdiction to consider Ambrose's Petition, given that 18 U.S.C. § 3625 precludes judicial review of discretionary determinations made pursuant to 18 U.S.C. § 3621. See Govt's Resp. pp. 12-13. Specifically, the APA prohibits review of an agency action when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Id., p. 13 (quoting 5 U.S.C. § 710(a)). The BOP maintained that discretionary RRC placement decisions are foreclosed by 18 U.S.C. § 3625. Id., pp. 13-14 (citations omitted).

In the alternative, the BOP contended that the Petition should be denied where the BOP had conducted the individualized assessment required by § 3621 in rendering its determination of RRC placement for Ambrose. Id., pp. 15-18. Further, the BOP asserted that § 3624(c) gives the BOP the discretion to decide whether a prisoner receives home confinement, and that Ambrose is not entitled to placement in home confinement at any time. Id., pp. 19-20. According to the Government, there is no statutory or constitutionally protected right in being transferred to a RRC or to home confinement. Id., pp. 19-20.

7

The BOP offered no rationale for the authority of the RRC to deny the referral by the Baltimore RRM to the RRC. Instead, the BOP took the position that it had no authority to make the RRC facility accept Ambrose's placement. Id., p. 21.

Based on the BOP's response to his Petition, Ambrose replied that he now realized he was not challenging a decision of the BOP, but rather a decision by one RRC facility. See Petitioner Ambrose's Response to United States in Response to Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 7], p. 2. Ambrose stated that had he known that it was the RRC and not the BOP which was denying him placement, he would have taken steps to ensure that the RRM in Baltimore had received all of the paperwork bearing on his character and he would have requested the RRM resubmit the request to all three RRCs in the Washington D.C. vicinity. Id.

Ambrose further maintained that any security concerns raised by the RRC were addressed by the BOP when FMC-Rochester staff determined he was entitled to spend part of his imprisonment in conditions that afforded him the reasonable opportunity to adjust to re-entry into the community. Id., pp. 3-5. Lastly, Ambrose argued that the RRM in Baltimore acted outside of § 3621(b) by not allowing inmates to go straight to home confinement, and instead requiring an inmate to spend a period of time in a RRC to see how the inmate adjusted. Id., pp. 5-6. Ambrose requested the BOP either put in place a plan to transfer him to home confinement for the remainder of his sentence or to order the RRC facility to accept the transfer of Ambrose to home confinement. Id., p. 6.

## II.   STATUTORY BACKGROUND

The Second Chance Act of 2007, Public Law No. 110–199, 122 Stat. 657, effective April 9, 2008, amended 18 U.S.C. § 3624(c) Prerelease Custody, to provide, in

8

relevant part:

> (1) In General. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> * * *
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> * * *
>
> (6) Issuance of Regulations. The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is--
>
> (A) conducted in a manner consistent with section 3621(b) of this title;
>
> (B) determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1), (c)(2), (c)(4), (c)(6).

The plain language of § 3624(c) requires regulations issued by the BOP designed to ensure that placement in an RRC by the BOP was done in a manner that is consistent with § 3621(b), determined on an individual basis, and was of a sufficient

9

duration to "provide the greatest likelihood of successful reintegration into the community." Section 3624(c) also provides the BOP with discretion to determine whether and how long an inmate should spend in an RRC or home placement before his release, so long as the pre-release placement was practicable and the BOP considered the factors set forth in § 3621(b).

Section § 3621(b), in turn, provides:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

## III. ANALYSIS[2]

The BOP maintained that this Court lacked subject matter jurisdiction over Ambrose Petition because APA review of discretionary RRC decisions are precluded by 18 U.S.C. § 3625.

Section 3625 explicitly states that the APA does not apply to §§ 3621(b) or 3264(c):

> The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

18 U.S.C. § 3625.

As such, the BOP is correct that this Court does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place Ambrose in an RRC or in home confinement placement. See Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2010) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625. Accordingly, any substantive decision by the BOP to admit a particular prisoner into RDAP,[3] or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court."); see also Davis v. English, Civ. No. 12-1483 (JNE/LIB), 2013 WL 1149526, *6 (D. Minn. Feb. 27, 2013) (allowing that prisoners to

---

[2] The Government has conceded that venue of this action is appropriate in the District of Minnesota and that Ambrose has exhausted the necessary administrative remedies. See Govt.'s Mem., pp. 3, 12.

[3] The BOP's authority to administer the Residential Drug Abuse Program (RDAP") and its authority to designate the place of imprisonment are both derived under § 3621. See 18 U.S.C. § 3621(b), (e).

bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625) (citation omitted). Thus, to the extent that Ambrose was asserting in his Petition that the decision by the BOP to not place him in an RRC or home confinement is arbitrary, this Court has no authority to review that claim.

Nevertheless, judicial review remains for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority. See Tapia v. United States, ——U.S. ——, ——, 131 S.Ct. 2382, 2390-91, 180 L.Ed.2d 357 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' . . . [D]ecisionmaking authority rests with the BOP.") (emphasis added); Close v. Thomas, 653 F.3d 970, 973-74 (9th Cir. 2011), cert. denied, —— U.S. ——, 132 S.Ct. 1606, 182 L.Ed.2d 213 (2012) ("Although judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority. . . .") (marks and citation omitted); Reeb, 636 F.3d at 1228 ("there is judicial review for a claim that an agency exceeded its statutory authority"). That is the case here.

Ambrose's Petition presents the Court with the unusual situation where the BOP not only properly considered all of the factors required by 18 U.S.C. § 3621(b) in its RRC assessment for Ambrose, but in fact based on that analysis, determined that he should be placed in home confinement or in an RRC for a period of 180-270 days. Specifically, in their assessment of Ambrose, BOP staff in FMC-Rochester considered the resources of the facility contemplated; the nature and circumstances of his offense;

12

his history and characteristics, including his active participation in education and vocational programs, and his work performance; his clear disciplinary history; his relevant prior record, including a conviction for disorderly conduct in 2000; a statement by the sentencing court that imposed the sentence against Ambrose that he should be placed in a facility as close to family in Pennsylvania as possible; the Sentencing Commission's guideline range for the offense for which he was convicted; and his resources, which included family support, specialized job skills in hardwood floor installation, his parent's residence, his life skills and community resources consisting of his extended family. See Buege Decl., Attachs. B, C. Based on these factors, BOP staff ultimately recommended 181-270 days of RRC placement and referred him to the RRM in Baltimore for implementation of this determination. Id., Attach. D. The RRM in Baltimore then acted on the BOP's determination and referred Ambrose to an RRC for this period of time. Buege Decl., ¶ 8. Nonetheless, based on only one of the factors – Ambrose's conviction for arson – this RRC denied the referral. Id., ¶ 9.

The Court finds that the RRC's subsequent denial of the RRC referral based solely on Ambrose's conviction for conspiracy to commit arson, and the BOP's apparent acquiescence to the RRC's decision on this one ground, runs afoul of § 3621(b). While Ambrose's conviction is a significant factor to consider, it remains that it is only one of several factors that must be addressed under § 3621(b), including the history and characteristics of Ambrose. 18 U.S.C. § 3621(b).

The Court also concludes that the RRC, an independent contractor, had no authority to make this determination, much less based on only one of many factors that must be considered pursuant to § 3621(b). See http://www.bop.gov/locations/cc/

index.jsp ("The BOP contracts with residential reentry centers (RRCs), also known as halfway houses, to provide assistance to inmates who are nearing release."). The duty for evaluating and determining placement of inmates rests with the BOP and not some third-party RRC. See 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment."). The BOP cannot ignore the mandates of § 3624(c) that the BOP must "afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," its own findings on two separate occasions that Ambrose should receive RRC placement, and its own approval for RRC placement, merely because one unidentified private third-party RRC refused the placement solely on his current conviction. In short, the BOP cannot hide behind the actions of one private contractor and claim that it has complied with the statutory obligations dictated by §§ 3621(b) and 3624(c).

Finally, to the extent that the BOP is now claiming that "it has changed its mind" and denied Ambrose's RRC placement based on the two arsons that comprised the conviction for which Ambrose was sentenced, this "change of heart" still amounts to a violation of § 3621(b), because it denies Ambrose placement based solely on his underlying offense, without consideration of the other factors outlined by this section.

For all of these reasons, the Court finds that the BOP has violated §§ 3621(b) and 3624(c). Accordingly, the BOP is instructed to comply with its own decision and either immediately place Ambrose in an RRC or release him to home confinement for the duration of his sentence.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **GRANTED** as follows:

The BOP shall immediately place Ambrose in an RRC or release him to home confinement for the duration of his sentence

Dated: October 30, 2013

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties on or before **November 13, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.